Sneed, J.,
delivered the opinion of the Court.
This was an action of trespass, vi et armis, from the Circuit Court of Campbell county, for an alleged assault and battery and false imprisonment, committed by James *221 Heatherly upon the person ox the defendant m error, Andrew Bridges. The transaction upon ■which the action is based, occurred during the late civil war. The action was commenced on the 29th of September, 1865. and the cause was submitted to a jury at the August term, 1867, and resulted in a verdict and judgment against Heatherly. The bill of exceptions does not show that it contains all the testimony adduced upon the trial, nor does it contain any words which would clearly import that fact. The plaintiff below, Andrew Bridges, was arrested by a party of Confederate soldiers, and taken to “ Speedwell Camp Ground,” where, it seems, he was tried upon some accusation not shown in the proof, and discharged. He was retained in custody about forty-eight hours; and, according to the proof here disclosed, he was subjected to no harsh or cruel treatment. The jury awarded him a verdict for two thousand dollars, the amount he claimed as damages. We are to presume, under our rules of practice, that there was ample testimony to sustain this verdict and judgment, and we cannot, therefore, disturb it on the facts of the case.
A motion is made at the bar to dismiss the appeal, on the ground that it was taken in forma pauperis, and we are referred to section 3192 of the Code, which allows the bringing of suits in forma pauperis, except for “false imprisonment, malicious prosecution and slanderous words.” This section refers to the bringing of the actions mentioned, which, for obvious reasons, are forbidden to be brought, unless the party plaintiff shall first give security for costs. It has no reference to the *222 prosecution of an appeal by a party defendant, against whom a verdict and judgment have been rendered in either of these actions. The law is very liberal in allowing appeals in forma pauperis. The Code, it is true, in its terms, seems to contemplate only the institution of a suit in this form; but it provides that either party to an action at law in the Circuit Court, may, at the term at which final judgment is rendered, pray an appeal in the nature of a writ of error, to the Supreme Court; and the courts, by construction, have uniformly extended the remedy, in forma pauperis, to appeals, appeals in error or writs of error, and other remedial process. It is said that the prosecution of a certiorari by a defendant, in forcible entry and detainer, is an exception. Norton v. Whitesides, 5 Hum., 381. And under the Code, no supersedeas shall issue upon application in forma pauperis, without express order of the Judge, dispensing with security. Such order may be made by the Judge, .only on notice to the adverse party, of the application. § 3133. We are aware of no other restrictions upon the application of this remedy; and we are of opinion that the right of a party to appeal in forma pauperis, from a judgment of false imprisonment, is not affected by section 3192, of the Code.
We are asked to reverse this judgment, because the damages are excessive; because, in the language of the counsel, the verdict shocks the moral sense, and demonstrates that it is the result of passion and prejudice. We can not assume that the verdict is unwarranted by the facts; for we have no assurance that the facts are all before us. We have no hesitation in pronouncing *223 upon the utter insufficiency of the testimony disclosed in this record to support a verdict so extraordinary; but 'we dare not impute to the jury either rashness, prejudice or passion, as we are bound by' the rules of law to presume that this record does not advise us of all the testimony upon which they acted; and we can not, therefore, disturb this judgment, on the ground that the damages are excessive. We are again asked to reverse the judgment and grant a new trial, upon the ground that the presiding Judge erred in permitting certain illegal evidence to go to the jury; and the counsel for the defendant in error admits, with an honorable frankness, that there was some illegal evidence thus admitted; but he insists that it was done without objection. It is true that this Court has repeatedly held that the admission of illegal evidence, without objection, can not be assigned as error. Cooke, 102; Hudson v. The State, 9 Yerg., 408; Ewell v. The State, 6 Yerg., 364, 374. But this rule, like many other doctrines of the law of evidence, has its exceptions and modifications. We do not suppose that evidence, simply illegal, though objected to, would justify the granting of a new trial, unless such evidence was hurtful, or likely to prove so, to the cause of the party objecting. If it were matter harmless or irrelevant, the Court would not, for this merely, set aside a verdict, even if objected to. But we take it to be a sound principle, that, if illegal matter objected to, however harmless or irrelevant of itself, when considered in connection with other illegal testimony, unobjected to, is calculated seriously to affect the interest of the party, *224 then both should be considered by the Court in estimating the probable influence of the first upon the minds of the jury.
The defendant in this case, was a citizen, not a soldier. The theory of the prosecution is, that the defendant was connected with the party of Confederate soldiers who arrested the plaintiff’. It seems, however, from the proof before us, that though the defendant was, about the time of the arrest, seen with the squad of soldiers, yet he was not present at the arrest — it is not shown that he counseled or procured it — nor did he accompany the squad with their prisoner to Speedwell Camp Ground. He is undoubtedly, guilty of many rash and imprudent speeches, and seemed ambitious to be thought a man of consequence among his 'neighbors — yet the testimony, so- far as it is before us, is very unsatisfactory in leading our minds to the conclusion of his guilt. Indeed, the witness, Nor-vill Hill expressly states, that the plaintiff was arrested by a squad of Confederates, and that they arrested him, the witness, at the same time, and that it was after the arrest that he first saw Heatherly; while it is stated by George Irvin, one of the plaintiff’s witnesses, that Heath-erly said, after the prisoners were started to Speedwell Camp Ground, that he told his son-in-law not to take them off, and that he was opposed to their being carried off. In the language of the witness, “Heatherly seemed as though he faulted his son-in-law, for sending them off.” It is true that we find much illegal and irrelevant testimony in this record — but very little of it was objected to by the defendant. The defendant was several times *225 proven to be- a rebel, without objection. To counteract its effect, he asked the privilege of proving that he was a Union man, and not a rebel — this privilege the Court refused him. But the Court upon better reflection, withdrew from the jury all evidence touching the politics of the defendant. Its withdrawal was, perhaps, of no avail, it had done its mischief, and this character of irrelevant and improper proof, much more of which appears in the record, may have been the inspiration of this extraordinary verdict. Other matters, perhaps, more foreign than this to the issue, were submitted to the jury.
We can conceive of no rule of law more important to be observed 'in jury trials, than that the evidence should be circumscribed and confined to the issue to be tried. It means something more than a mere economy of time. It means that public justice can not be administered in its integrity and purity, if the minds of a jury are to be decoyed from the issue they are trying, and confused and confounded by a mass of irrelevant matter which can not tend to elucidate the issue. When once brought before a jury, it has generally performed its office. In the mass of relevant and irrelevant matter, it is humanly impossible, with many jurors, to eliminate the pertinent from the impertinent, the material from the immaterial, the legal from the illegal, and to divest themselves of those natural and human passions and prejudices which such testimony is often specially intended to generate. The question, whether defendant was of the Eederal or the Confederate party, in our late war, was in no sense, legitimate in this case, in the state of the proof as here disclosed. We have held that, after a party is *226 identified with a transaction occurring, in those times, such proof might be admissible to indicate the animus, and explain the conduct of the parties in a certain class of cases, as in a case of alleged duress, when the action of the party relying on that defense, would, perhaps, be influenced by the political status of his adversary. , But in this case, as it is here presented, the defendant had not been connected by proper legal proof, with the alleged trespass, at the time the evidence was admitted against him; and in the unhappy feuds which have survived the civil war, we can conceive of no more fatal virus, wherewith to poison and pollute the fountains of public justice, than the proof that the plaintiff or defendant belonged to the Union or the Southern party, as the character of the case, or the complexion of the jury might happen to prompt the introduction of such testimony. But, while, for the reasons already stated, we can not reverse the judgment for this cause, we may he permitted to reprobate the indiscrimate use of such testimony in future, and to indulge the hope that the time is rapidly passing away, when the rights of the Federal or the Confederate litigant are to be weighed by the complexion of his politics in a court of justice.
It seems that the soldiers had carried their prisoners to the house of the defendant, where they tarried for the night. A witness is permitted to prove, without objection, that while the party were starting to camp, next morning, with their prisoners, the family of the defendant seemed to rejoice, and betrayed their gratification in laughter. And, it is afterwards proven, under defendant’s objection, that a sort of a trial of the *227 prisoners was had at Speedwell Camp Ground, and that the Sergeant obtained some proof from the defendant’s house, and “wrote it down.” I suppose, said the witness, it was used at the trial. Now, the defendant was not present ■ at the' trial, nor is his name connected in any way with the act of obtaining .proof against the prisoners at his house, or from a member of his family. It is not even stated that the proof was injurious or intended to be injurious to the prisoners; and, indeed, it could not have been very serious, as the prisoners seem to have been released at once, after the trial. This testimony was illegal and improper. It tends to prejudice the defendant in the minds of the jury. It detailed a transaction with which he had nothing to do; and which, so far as the proof shows, occurred in his absence. It was intended to impute to the family of defendant, an unfriendly disposition toward the plaintiff; and, by implication, to connect the defendant with it. When considered in connection' with other circumstances in the case, it was, doubtless, fatal to the defendant. The demonstrations of defendant’s family, however hostile, could in no way inculpate him in the commission of the alleged trespass, unless he is shown to have given them countenance by his presence or otherwise. Nor, indeed, even then would the proof be legitimate, unless the defendant had already been connected with the commission of the trespass. His association with the plaintiff’s captors, in the arrest of the witness, Nelson, had not done it. Autry v. Coffman, 6 Cold., 510. His bravado and gasconade, indulged in, doubtless, to conciliate his military .visitors, from whom *228 it seems he bad been concealing himself, to avoid conscription, had not connected him with the trespass upon the plaintiff. Indeed, there is no such proof as the law requires, by which the defendant is shown to have participated in the act of arresting the plaintiff; and while, in the state of the record, we have no right to assume that no such proof was adduced at the trial, we have no hesitation in holding that the admission of the illegal testimony referred to, was a grave error, for which the judgment must be reversed.
There are other errors assigned which might be worthy of consideration, but in the view we have taken of the case, it is unnecessary to examine any other question.
The judgment is reversed, and the cause remanded .for .a new trial.